261 So.2d 914

**L. P. BROWN**

**v.**

**STATE.**

**5 Div. 42.**

Court of Criminal Appeals of Alabama.

April 6, 1971.

On Rehearing Sept. 14, 1971.

Rehearing Denied Nov. 2, 1971.

Russell, Raymon & Russell, Tuskegee, for appellant.

MacDonald Gallion, Atty. Gen., and Jasper B. Roberts, Asst. Atty. Gen., for the State.

PER CURIAM.

The defendant was convicted of cattle theft in the circuit court of Macon County and sentenced to three (3) years imprisonment.

On May 29, 1969, James H. Pearson and his sister, Drucilla Pearson, were joint owners of a cow. On the night of May 29, 1969, the cow was tied with a rope near their home in Macon County and was missing the next morning, the rope having been cut and a part of it left at the scene. On June 6, 1969, James Pearson, along with several deputy sheriffs and a Mr. Hammock, a cattle investigator for the State, found the cow in a pasture in Montgomery County which was leased by the defendant. At the time the cow was found, it could not be seen from any public road and in making their way to the cow, the officers opened one or more pasture gates within the pasture. At least one family was living in a house within the pasture a short distance from one gate opened. From the testimony it appears that the cow had been dehorned sometime after it was taken from the Pearson home and the State introduced several photographs taken after it was seized by the officers. The cow was identified by the owner, Pearson, when it was found in the pasture.

The defendant denied that he took the cow from the Pearson home, but instead claimed that he bought it from one James Scott on or about June 1st and that the cow was dehorned at the time that he bought it. He also claimed that he bought several other cows from James Scott who had them on a truck at the time and before this purchase he had bought still other cows from James Scott. Some of the cows bought from Scott on the first purchase were later released to the officers on claim that they were missing and allegedly stolen from their owners. Several witnesses testified tending to substantiate the fact that they had seen a truck with cattle on it on the morning of June 5 at one of the defendant's places and that the defendant purchased several cows on two occasions as testified to by him. The defendant offered testimony as to his good character.

When the State rested its case the defendant made a motion to exclude the evidence and discharge the defendant on the ground that the State had not made out a case. It is the contention of the defendant that no testimony was offered tending to show possession of the cow in the defendant at the time it was found by the officers. If there was error on the part of the court in overruling the motion because the defendant was not shown to be in possession of the cow, which we do not decide, such error was cured by the subsequent

testimony of the defendant that he had bought the cow from James Scott and he had leased the pasture where the cow was found. Britton v. State, 15 Ala.App. 584, 74 So. 721.

In a larceny prosecution, the possession by the defendant of the property described in the indictment recently after it was stolen, if unexplained, is a fact sufficient to support an inference by a jury that the defendant had stolen said property, and the credibility and sufficiency of defendant's explanation, if the recent possession is explained, is also for the jury. Graham v. State, 44 Ala.App. 554, 216 So.2d 298.

The Court overruled a motion by defendant to exclude all the evidence relating to seizure of the cow by the officers because the search of the pasture where the cow was found was made without a search warrant and therefore in violation of Article 1, Section 5, of the Constitution of Alabama, 1901, as follows:

"That the people shall be secure in their persons, houses, papers, and possessions from unreasonable seizure or searches, and that no warrants shall issue to search any place or to seize any person or thing without probable cause, supported by oath or affirmation."

It does not appear that the Appellate Courts of Alabama have ever extended the protection afforded by the constitutional provision, supra, to open fields or pasture land beyond the curtilage of the home or business establishment. The appellant argues that the word "possession" in the said constitutional provision should be held to include more than houses, homes, and the curtilage thereof and be broad enough to include land where there is occupancy and full dominion exercised over it. The Supreme Courts of Tennessee and Mississippi have adopted this view, holding in cases involving the operation of stills in open lands, beyond the curtilage of the defendant's home, that evidence secured without a search warrant, was illegal and inadmissible. Barnard v. State, 155 Miss.

390, 124 So. 479; Welch v. State, 154 Tenn. 60, 289 S.W. 510.

However, in the cases of Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L. Ed. 898; Atwell v. United States, 5 Cir., 414 F.2d 136; Stark v. United States, 8 Cir., 44 F.2d 946; Koth v. United States, 9 Cir., 16 F.2d 59, the federal courts have held that the protection of the 4th Amendment to the Constitution of the United States does not extend to open fields.

Our research indicates that the present weight of authority, state and federal courts, supports the above cited cases. See 74 A.L.R. 1454 and 89 A.L.R.2d 780, for many cases collected on this subject. The states of Kentucky, Texas, Oklahoma, Indiana and Missouri hold to this view.

The word "possession" does not appear in the 4th Amendment, supra, but it is provided that "the right of the people to be secure in their persons, houses, papers and *effects*, against unreasonable searches and seizures, shall not be violated, etc." In the opinion of the court the words "possession" and "effects" are not so dissimilar in their meaning with regard to property as to call for different interpretation. The two words have a common meaning as related to the question raised in this case.

The sections, above referred to, of the Constitution of the State of Alabama and the United States Constitution protect against unreasonable search and seizure. This is the crux of the whole matter. In the opinion of this court the search of pasture land or open land made in this case under the circumstances and with the knowledge of the state investigator of stolen cows surrendered by the appellant theretofore, is not of such character as to be unreasonable.

Then too, it is to be noted in this case that there was at least one other house occupied by people living within the pasture enclosure and the occupancy of all of the land was not exclusively in the defendant.

This court sees no good reason to depart from the time-honored understanding of the Bar and Courts that Article 1, § 5, Constitution of 1901 does not extend to open land outside of the curtilage, nor do we think that the framers of the Constitution of 1901 intended it to be so inclusive. We prefer to follow the rule laid down, supra, in the Federal Courts, and hold that the search of the pasture land was not illegal and the court was not in error in overruling the motion to exclude this evidence.

During the trial of the case the following occurred on the cross-examination of the defendant, p. 65 of the transcript:

"Q. In all, Mr. Brown, in the events of the past year, how many cattle have you had repossessed or taken or seized that were stolen cattle?

"MR. RAYMON: We're going to object, if it please the Court.

"MR. YOUNG: Shows a guilt by inference on his part, your Honor.

"THE COURT: Overruled.

"MR. RAYMON: We have an exception.

"Q. How many have you had, Mr. Brown?

"A. Seven."

The appellant argues that the court was in error in overruling the above objection to his testimony. Generally in a prosecution for a particular crime, evidence which shows, or tends to show, commission of other crimes of the same sort, wholly independent of and unconnected with that charge, is inadmissable, but there is an exception where the object is to show knowledge, intent, plan or design, motive, identity and inseparable crimes. Robinson v. State, 40 Ala.App. 101, 108 So.2d 188. This rule and exceptions thereto are also clearly set out in Garner v. State, 269 Ala. 531, 114 So.2d 385.

The testimony was admissible under the above authorities to show a guilty intent and scienter.

Besides, the attorney for the appellant in his cross-examination of witness Hammock elicited testimony that other cattle alleged to be stolen were turned over by the defendant to Hammock in his investigation of other alleged thefts of cattle.

The appellant insists that the court erred in its ruling on testimony with regard to the following questions and answers set out on p. 35 of the transcript:

"Q. Did you make—All right. I'll ask you, when you made your investigation of Jim Scott in Macon County and in that vicinity of Montgomery County could you locate a Jim Scott?

"MR. RAYMON: We object, if it please the Court.

"Q. Did you ascertain—

"THE COURT: Overruled.

"MR. RAYMON: We except.

"A. I went for weeks—In investigating a case, I try to bring out the facts regardless of whether they are for or against—

"MR. RAYMON: We object to that, if it please the Court.

"A. The facts—

"THE COURT: Sustained as to that.

"Q. What did you do in that?

"A. I diligently searched for a Jim Scott in this area all over Macon County and the eastern part of Montgomery County, and I found only one, that had been dead a number of years. He was the only Jim Scott that had ever lived in this country that anybody knew of."

Counsel argues that the statement of the witness is hearsay and that the court committed reversible error in admitting it in evidence.

The statement of the witness that he had not been able to find a Jim Scott in Macon

County or the eastern part of Montgomery County was of a fact. Furthermore, no objection was interposed to the question and no ruling of the court was invoked. The admission of hearsay evidence is not reviewable in the absence of an objection or a request for a ruling by the trial court. Gooden v. Town of Childersburg, 22 Ala. App. 421, 116 So. 410; Gaddis v. State, 39 Ala.App. 630, 106 So.2d 268; Kozlowski v. State, 32 Ala.App. 453, 27 So.2d 811.

The court, at the request of the defendant gave several written charges: Nos. 4, 8, 7, 11 and 15, but refused charges numbered 3, 5, 6, 9, 10, 12 and 2.

Charges 5, 9, 12 and 2 were fairly covered by the oral charges of the court. Refused charge No. 10, is as follows:

"The Court charges you, Gentlemen of the jury, that if the taking was open and notorious, and there was no subsequent attempt to conceal the property, and no denial, but an avowal of the taking, a strong presumption arises that there was no felonious intent; which must be repelled by clear and convincing evidence before a conviction is authorized."

The undisputed testimony showed the taking of the cow was not open and notorious, it occurring between 11:00 P.M. and 5:00 A.M. The defendant denied the taking. This charge was therefore abstract and properly refused. Floyd v. State, 23 Ala.App. 216, 123 So. 103.

Charge No. 3, is as follows:

"The Court charges the Jury, that unless you believe from the evidence in this case beyond all reasonable doubt that a felonious intent on the part of the defendant existed at the time of the taking of the cow into the possession of the defendant, you must find the defendant not guilty."

This charge was fully covered by the oral charge of the court and therefore properly refused.

Charge No. 6 is as follows:

"The Court charges the jury that if the evidence in this case convinces you that there is a probability of the defendant's innocence, then your verdict should be not guilty."

This charge has been condemned by this court in the case of Lovejoy v. State, 33 Ala.App. 414, 34 So.2d 692.

Charge No. 1 was the affirmative charge and was properly refused.

Ground 11 of the motion for a new trial alleged that the defendant did not receive a fair trial in that all of the jury were Negroes and the defendant is a white man charged with stealing a cow belonging to a Negro, and that in all cases, whether criminal or civil, heretofore tried in Macon County by all Negro juries wherein one of the persons was white and the other Negro, all verdicts have been in favor of the Negro party.

Ground 12 charges that the verdict in this case was based on bias and prejudice.

The court heard testimony offered by the appellant and later overruled the motion. It is familiar law that it is the duty of the court to set aside verdicts wherein injustice has been done by juries on account of prejudice or other improper influence. However, a trial court has a discretion to be exercised in such matters since it is in better position to make a determination of this question than an appellate court. The trial court has the advantage of being present and observing the conduct of the trial, the attitude of the parties and jurors and the general courtroom atmosphere. In this case we cannot say that the court was in error in overruling the motion for a new trial based on this ground or any other ground set out in this motion.

In the opinion of the court this case is due to be affirmed.

The foregoing opinion was prepared by W. J. Haralson, Supernumerary Circuit

Judge, and was adopted by the court as its opinion.

Affirmed.

## ON REHEARING

PRICE, Presiding Judge.

After further consideration, the court is of opinion reversible error was committed in overruling the objection to the question propounded by the state to the defendant concerning other cows found in his possession.

■ On a trial for larceny, the corpus delicti having been established, unexplained possession by accused of the recently stolen property is a fact from which the jury may infer guilt and the burden of explaining possession is on the accused. Heath v. State, 30 Ala.App. 416, 7 So.2d 579.

In Harris v. State, 41 Ala.App. 261, 130 So.2d 227, Judge Harwood, the then Presiding Judge of the Court of Appeals, said:

"* * * (W)e are clear to the conclusion that the doctrines of our cases dealing with receiving stolen goods prohibit evidence of other like offenses unless a defendant obtains the stolen goods from the same thief."

See also Sledge v. State, 40 Ala.App. 671, 122 So.2d 165.

On this question the state investigator testified defendant said he had turned over to him (the investigator) other cattle but he was not going to give him this one. "* * * Well, he was referring to this cow and two other Pearson cows that had disappeared at another time and some cattle that had disappeared in Montgomery County."

■ Defendant's statement that he had released other cattle to the officers on the *claim* that they were stolen and the investigator's testimony that other cattle had disappeared did not constitute proof that they were actually stolen cattle, or that they were obtained from the same thief from whom defendant obtained the cow laid in the indictment.

The judgment is reversed and the cause remanded.

Reversed and remanded.